**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DANIEL HORNBAKE, JOHN BRUNO, NICHOLAS MINICHINI, NATIONAL RIFLE ASSOCIATION OF AMERICA, GUN OWNERS OF AMERICA, INC., and GUN OWNERS FOUNDATION, | : : : : : : : | Civil Action No. _____ |
| Plaintiffs, | : : | |
| v. | : : | |
| TODD W. BLANCHE, in his official capacity as Acting Attorney General of the United States, | : : : : | |
| Defendant. | : : | |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Plaintiffs Daniel Hornbake, John Bruno, Nicholas Minichini, National Rifle Association of America ("NRA"), Gun Owners of America, Inc. ("GOA"), and Gun Owners Foundation ("GOF") complain of Defendant Todd W. Blanche, in his official capacity as Acting Attorney General of the United States, and allege as follows:

**INTRODUCTION**

1.      The Supreme Court held in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen* that the Second Amendment protects the right to carry firearms in public for self-defense, and that any regulation of such conduct is unconstitutional unless it is "consistent with this Nation's historical tradition of firearm regulation." 597 U.S. 1, 17 (2022).

2.     Plaintiffs challenge the constitutionality of 18 U.S.C. § 930(a), which prohibits knowingly possessing a firearm in federal facilities, as applied to the carrying of firearms in United States Post Offices. Plaintiffs also challenge the constitutionality of 39 C.F.R. § 232.1(l), which prohibits carrying or storing firearms on property under the control of the United States Postal Service.

3.     Plaintiffs Daniel Hornbake, John Bruno, and Nicholas Minichini (collectively, "Individual Plaintiffs") are ordinary, law-abiding citizens. Each desires and intends to exercise his Second Amendment right to carry firearms for self-defense at United States Post Offices and publicly accessible associated property.

4.     Plaintiffs NRA, GOA, and GOF (collectively, "Organizational Plaintiffs") bring this action on behalf of their members and supporters, including the Individual Plaintiffs, who wish to exercise their Second Amendment right to carry firearms for self-defense at United States Post Offices and publicly accessible associated property.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction under 28 U.S.C. § 1331 because Plaintiffs' claims arise under the Constitution and laws of the United States.

6.     Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiffs' claims occurred in this District. Venue is also proper under 28 U.S.C. § 1391(e)(1) because Defendant Blanche is an officer of the United States acting in his official capacity, Plaintiff Hornbake resides in this District, Plaintiffs NRA, GOA, and GOF have members and supporters (including Hornbake) who reside in this District and who are harmed by the challenged

2

prohibitions, and a substantial part of the events giving rise to Plaintiffs' claims occurred in this District.

## PARTIES

7.    Plaintiff Daniel Hornbake is a resident of Johnstown, Pennsylvania. Hornbake is currently a Pennsylvania State Constable for Cambria County, Pennsylvania, and a Law Enforcement Firearms Instructor.

8.    Hornbake is a law-abiding United States citizen who holds a valid Pennsylvania License to Carry Firearms (LTCF). He is a member of NRA and GOA.

9.    Hornbake regularly carries a handgun for lawful self-defense during his daily activities and intends to continue doing so. Hornbake typically visits his local United States Post Office in Johnstown, Pennsylvania, multiple times each month as a private citizen—unrelated to any official law-enforcement duty, authority, or assignment—including to ship goods sold on various online platforms. Although he may carry his firearm at post offices during the lawful performance of his official duties as a constable, he otherwise must disarm before entering post offices and publicly accessible associated property for fear of arrest and prosecution. Hornbake would visit the post office more frequently and would carry his firearm while doing so if he did not have to disarm and lose the ability to defend himself.

10.    Plaintiff John Bruno resides in Hummelstown, Pennsylvania. Bruno is currently a Pennsylvania State Constable for Dauphin County, Pennsylvania. He served as an investigator for the Pennsylvania Office of Attorney General from 1985 until 2015 and has been a Pennsylvania State Constable since 1989.

11. Bruno is a law-abiding United States citizen who holds a valid Pennsylvania LTCF. He is a member of NRA and GOA.

12. Bruno regularly carries a handgun for lawful self-defense during his daily activities and intends to continue doing so. Bruno rents a Post Office Box at his local United States Post Office in Hummelstown, Pennsylvania. He typically visits the post office several times each month as a private citizen—unrelated to any official law-enforcement duty, authority, or assignment—to check his mail or send letters or packages. Although he may carry his firearm at post offices during the lawful performance of his official duties as a constable, he otherwise must disarm before entering post offices and publicly accessible associated property for fear of arrest and prosecution. Bruno would visit the post office more frequently and would carry his firearm while doing so if he did not have to disarm and lose the ability to defend himself.

13. Plaintiff Nicholas Minichini is a resident of Coatesville, Pennsylvania. He is a federally licensed firearms dealer who earns his livelihood by dealing in firearms. He holds manufacturer, importer, and dealer licenses and is also a "Special Occupational Taxpayer" authorized to deal in firearms regulated under the National Firearms Act.

14. Minichini is a law-abiding United States citizen who holds a valid Pennsylvania LTCF, as well as licenses to carry issued by New Jersey, Maryland, Utah, and Florida. He is a member of NRA and GOA.

4

15.   Minichini regularly carries a handgun for lawful self-defense during his daily activities and intends to continue doing so. As part of his business operations, Minichini conducts the majority of his shipping through the United States Postal Service and typically visits a United States Post Office multiple times each week. He frequents the United States Post Offices located in Brandamore, Pennsylvania, and Honey Brook, Pennsylvania, but avoids the United States Post Office in Coatesville, Pennsylvania, because of criminal activity in the surrounding area.

16.   Minichini is forced to disarm before traveling to and entering the post office for fear of arrest and criminal prosecution under the challenged laws.

17.   Minichini regularly transports firearms worth thousands of dollars to the post office for shipment to customers in the ordinary course of his federally licensed business. The challenged prohibitions force him to transport valuable firearms while himself unarmed, exposing him to an increased risk of theft or robbery. But for Defendant's enforcement of the challenged prohibitions, Minichini would lawfully carry his handgun while traveling to, entering, and conducting business at United States Post Office facilities.

18.   Plaintiff NRA is a nonprofit membership organization founded in 1871 and devoted to protecting the right to keep and bear arms. It is America's oldest civil rights organization and America's leading provider of firearms marksmanship and safety training for both civilians and law enforcement. The NRA has millions of members across the nation, including thousands of members in Pennsylvania. The NRA brings this action on behalf of its members, including the Individual Plaintiffs,

who intend and desire to exercise their Second Amendment right to carry firearms for self-defense in, and on property under the control of, United States Post Offices. NRA members would carry at these locations but for their reasonable fear of prosecution.

19.     Plaintiff GOA is a California non-stock corporation with its principal place of business in Springfield, Virginia. GOA is organized and operated as a nonprofit membership organization that is exempt from federal income taxes under Section 501(c)(4) of the U.S. Internal Revenue Code. GOA was formed in 1976 to preserve and defend the Second Amendment rights of gun owners. GOA has more than 2 million members and supporters across the country, including many within Pennsylvania, some of whom reside in this District. GOA brings this action on behalf of its members, including the Individual Plaintiffs, who intend and desire to exercise their Second Amendment right to carry firearms for self-defense in, and on property under the control of, United States Post Offices. GOA members would carry at these locations but for their reasonable fear of prosecution.

20.     Plaintiff GOF is a Virginia non-stock corporation with its principal place of business in Springfield, Virginia. GOF was formed in 1983 and is organized and operated as a nonprofit legal defense and educational foundation that is exempt from federal income taxes under Section 501(c)(3) of the U.S. Internal Revenue Code. Although not a "traditional" membership organization, GOF possesses "indicia of membership" under *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333 (1977), for purposes of representing its supporters' interests in litigation. *See, e.g., Texas v.*

6

*BATFE*, 737 F. Supp. 3d 426, 438 (N.D. Tex. 2024). GOF is financially supported by gun owners across the country, including by two of its board members as well as residents of Pennsylvania, including within this District, all of whom receive updates about GOF's activities and fund the organization's activities so that it can, *inter alia*, file litigation such as this to preserve, protect, and defend their right to keep and bear arms. GOF brings this action on behalf of its supporters, who intend and desire to exercise their Second Amendment right to carry firearms for self-defense in, and on property under the control of, United States Post Offices. GOF supporters would carry at these locations but for their reasonable fear of prosecution.

21.    In addition to Hornbake, the Organizational Plaintiffs have many other members and supporters within this District who visit their local post offices and desire and intend to carry firearms when doing so but cannot because of the challenged provisions. For example, Bonita Shreve, a member of NRA and GOA and a supporter of GOF, resides within this District and regularly visits her local post office. She would carry her firearm there for self-defense, as she does during her ordinary daily activities, but refrains from doing so for fear of prosecution under the challenged laws.

22.    Defendant Todd W. Blanche is the Acting Attorney General of the United States. As Acting Attorney General, Blanche leads the United States Department of Justice and is responsible for enforcing federal criminal laws, including 18 U.S.C. § 930(a) and 39 C.F.R. § 232.1(l). Acting Attorney General Blanche is being sued in his official capacity.

7

## GENERAL ALLEGATIONS

23. Plaintiffs challenge two federal bans on firearms carry in United States Post Offices and on postal property.

24. 18 U.S.C. § 930(a) broadly prohibits any person from knowingly possessing a firearm in a "Federal facility." "The term 'Federal facility' means a building or part thereof owned or leased by the Federal Government, where Federal employees are regularly present for the purpose of performing their official duties." *Id.* § 930(g)(1). Under this definition, a United States Post Office is a "Federal facility." A violation of § 930(a) is punishable by a fine, up to one year's imprisonment, or both. *Id.* § 930(a).

25. 39 C.F.R. § 232.1(l) prohibits carrying or storing firearms "on postal property," except for "official purposes." A violation of § 232.1(l) is punishable by a fine, up to 30 days' imprisonment, or both. *Id.* § 232.1(p)(2).

26. "[T]he standard for applying the Second Amendment is as follows: When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's unqualified command." *Bruen*, 597 U.S. at 24 (quotation marks omitted).

27. *Bruen* held that "the plain text of the Second Amendment protects" Plaintiffs' "proposed course of conduct—carrying handguns publicly for self-defense."

*Id.* at 32. There are few places more "public" than United States Post Offices, which receive billions of customer visits per year. *See, e.g.*, U.S. Postal Serv. Office of Inspector Gen., *Billions Served: Foot Traffic at the Post Office* 1 (Sep. 11, 2017)[1] ("The OIG estimates 2.7 billion visits in FY 2016[.]"). Accordingly, the challenged bans on carrying firearms in United States Post Offices and on postal property are unconstitutional unless the government "affirmatively prove[s] that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Bruen*, 597 U.S. at 19.

28.    *Bruen* provided two relevant metrics for determining whether modern regulations that address longstanding societal problems contradict historical tradition: "when a challenged regulation addresses a general societal problem that has persisted since the 18th century, the lack of a distinctly similar historical regulation addressing that problem is relevant evidence that the challenged regulation is inconsistent with the Second Amendment. Likewise, if earlier generations addressed the societal problem, but did so through materially different means, that also could be evidence that a modern regulation is unconstitutional." *Id.* at 26–27. In such cases, the historical "inquiry will be fairly straightforward," *id.* at 26, just as it was in *Bruen* and *District of Columbia v. Heller*, 554 U.S. 570 (2008), *see Bruen*, 597 U.S. at 27.

---

[1] https://www.uspsoig.gov/sites/default/files/reports/2023-01/RARC-WP-17-012.pdf.

29. The existence of post offices in America predates the Second Amendment's ratification by over a century-and-a-half. Richard Fairbanks became colonial America's first postmaster in 1639, and "his tavern near [Boston's] Long Wharf became the colonies' first post office." Winifred Gallagher, HOW THE POST OFFICE CREATED AMERICA 13 (2016). Taverns commonly served as post offices in early America, *see id.* at 17, 61—"centers for people to receive their mail," Steven Struzinski, *The Tavern in Colonial America, in* 1 THE GETTYSBURG HISTORICAL J., art. 7, at 31 (2002)—and it was so common for patrons to carry their firearms there that taverns typically contained "hooks to hang firearms," Harriet Tapley, *Old Tavern Days in Danvers*, *in* 8 THE HISTORICAL COLLECTIONS OF THE DANVERS HISTORICAL SOCIETY 1, 4 (1920), and regularly hosted shooting matches, Nancy Struna, PEOPLE OF PROWESS: SPORT, LEISURE, AND LABOR IN EARLY ANGLO-AMERICA 152 (1996).

30. On July 26, 1775, the Second Continental Congress established the Post Office Department and appointed Benjamin Franklin as postmaster general. *See* Gallagher, at 26–27. America had 75 post offices by 1789, 18,417 by 1850, and 76,688 by 1900. Office of the Historian, Corporate Affairs, THE UNITED STATES POSTAL SERVICE: AN AMERICAN HISTORY 140 (2025). Protecting mail, mail carriers, the public, and post offices is thus a concern that has persisted since the early colonial period. Accordingly, the challenged prohibitions cannot be justified as addressing some novel societal ill.

31.    The government will be unable to provide a historical regulation that is "relevantly similar" to 18 U.S.C. § 930(a) or 39 C.F.R. § 232.1(l), let alone one that is "distinctly similar." *See Bruen*, 597 U.S. at 26, 28–29.

32.    "The United States" has previously "concede[d] that 'there is no evidence of firearms being prohibited at post offices … at the time of the founding.'" *United States v. Ayala*, 711 F. Supp. 3d 1333, 1340 (M.D. Fla. 2024), *appeal dismissed*, No. 24-10462 (11th Cir. Aug. 22, 2025) (quoting Gov't Suppl. Br. in *United States v. Ayala*, No. 8:22-cr-00369-KKM-AAS, ECF No. 32, at 4 (M.D. Fla.)) (brackets omitted). Indeed, until only recently, firearms carry was allowed at post offices—including in Pennsylvania. For example, in the early nineteenth century, travel writer Fortescue Cuming detailed "putting on my shot belt and taking my gun" on a walk to the "post-office" in Harrisburg, where he mailed letters and discussed his travels with the postmaster. Fortescue Cuming, SKETCHES OF A TOUR TO THE WESTERN COUNTRY 23 (1810).

33.    It was not until 1972—more than 330 years after the inception of America's postal service and nearly 200 years after the Founding—that the federal government first banned firearms at post offices. *See* 37 Fed. Reg. 24,346–47 (1972).

34.    The "Founders were acutely aware of threats to post offices and postal employees, yet chose to criminalize the offending behavior rather than banning firearms outright[.]" *Firearms Pol'y Coal. Inc. v. Bondi*, 805 F. Supp. 3d 721, 729 (N.D. Tex. 2025). Specifically, in 1792, Congress made it a capital offense to "rob the mail" or "steal and take … from or out of any post-office, any letter or packet." 1 Stat. 237,

11

§ 17 (1792). In 1799, Congress imposed a fine of up to $100 for obstructing the mail, 1 Stat. 733, § 3 (1799), and provided that any person who robbed a mail carrier would be punished by public whipping and imprisonment, and, for a second offense, death, *id.* at 736–37, § 15. Where the robbery was effected by the use of a dangerous weapon putting the life of the carrier in jeopardy, the punishment was death; where such an attempt was made but the robbery was not effected, the offender was subject to whipping and imprisonment. *Id.*

35.    Congress likewise passed numerous laws regulating and protecting the mail, mail carriers, and post offices throughout the nineteenth century. But they punished criminals, not law-abiding gun owners, and thus they did not ban firearms at post offices or on publicly accessible associated property. *See generally* THE POSTAL LAWS AND REGULATIONS OF THE UNITED STATES OF AMERICA, PUBLISHED IN ACCORDANCE WITH THE ACT OF CONGRESS APPROVED MARCH 3, 1879 (Arthur H. Bissell & Thomas B. Kirby eds., 1879).

36.    Accordingly, interference with mail, mail carriers, and post offices is "a general societal problem that has persisted since the 18th century," but history provides no "distinctly similar historical regulation" to 18 U.S.C. § 930(a) or 39 C.F.R. § 232.1(l) "addressing that problem." *Bruen*, 597 U.S. at 26. Rather, "earlier generations addressed the societal problem … through materially different means," *id.*—they "chose to criminalize the offending behavior rather than banning firearms." *Firearms Pol'y Coal. Inc.*, 805 F. Supp. 3d at 729.

12

37. In sum, the government will not be able to justify 18 U.S.C. § 930(a) or 39 C.F.R. § 232.1(l) with any representative or distinctly similar analogues rooted in the Founding era.

38. Nor will the government be able to prove that a post office is a "sensitive place" where firearms carry may be banned. Elaborating on *Heller*'s reference to "government buildings," *see Heller*, 554 U.S. at 626, the *Bruen* Court explained that there were "relatively few 18th- and 19th-century 'sensitive places' where weapons were altogether prohibited," namely, "legislative assemblies, polling places, and courthouses," *Bruen*, 597 U.S. at 30 (citing David B. Kopel & Joseph G.S. Greenlee, *The "Sensitive Places" Doctrine: Locational Limits on the Right to Bear Arms*, 13 CHARLESTON L. REV. 205, 229–36, 244–47 (2018)). Post offices fall far outside that tradition.

39. First, *Heller* made clear that any "sensitive place" regulation must have "historical justifications." 554 U.S. at 635; *see also Bruen*, 597 U.S. at 17 ("*Only if* a firearm regulation is consistent with this Nation's historical tradition may a court" uphold it) (quotation marks omitted and emphasis added). There is no historical justification for prohibiting firearms at post offices—as described above, for nearly 200 years, the federal government chose to criminalize offending conduct rather than prohibit firearms at post offices.

40. Second, carry prohibitions at legislative assemblies, polling places, and courthouses were enacted to protect "government deliberation from violent interference." Kopel & Greenlee, 13 CHARLESTON L. REV. at 205; *see also Ayala*, 711

13

F. Supp. 3d at 1342 (the laws aimed to "address … intimidation during official government proceedings"). But "not every government building—certainly not ordinary post offices—constitutes a 'center' of government deliberations." *Ayala*, 711 F. Supp. 3d at 1343.

41.  Third, while *Bruen* provides that courts can analogize to historical sensitive places "to determine that modern regulations prohibiting the carry of firearms in *new* and analogous sensitive places are constitutionally permissible," 597 U.S. at 30, post offices are not "*new*," nor are they analogous to historical sensitive places.

42.  Fourth, historically, the government often provided comprehensive security at legislative assemblies, polling places, and courthouses. *See generally* Angus McClellan, *The Second Amendment, Sensitive Places, and Comprehensive Government Security* (Jan. 20, 2026);[2] *see also Hardaway v. Nigrelli*, 639 F. Supp. 3d 422, 440 (W.D.N.Y. 2022), *vacated on other grounds*, *Antonyuk v. Chiumento*, 89 F.4th 271 (2d Cir. 2023) ("sensitive places" are "civic locations sporadically visited in general, where a bad-intentioned armed person could disrupt key functions of democracy," and are "typically secured locations, where uniform lack of firearms is generally a condition of entry, and where government officials are present and vulnerable to attack") (emphases removed). The government does not comprehensively secure post offices. "In short, post offices do not resemble the narrow

---

[2] https://ssrn.com/abstract=6105246.

classes of government buildings that were, at times, firearms-free zones at the founding." *Ayala*, 711 F. Supp. 3d at 1342.

43.    Accordingly, the Middle District of Florida held 18 U.S.C. § 930(a) unconstitutional as applied to a postal worker indicted for possessing a firearm in a United States Post Office. *Ayala*, 711 F. Supp. 3d at 1337. And the Northern District of Texas held both 18 U.S.C. § 930(a) and 39 C.F.R. § 232.1(l) unconstitutional as applied to individuals and members of nonprofit membership organizations who sought to carry firearms at United States Post Offices and on postal property. *Firearms Pol'y Coal. Inc.*, 805 F. Supp. 3d at 727.

## CLAIM FOR RELIEF

### VIOLATION OF THE SECOND AMENDMENT

44.    Plaintiffs incorporate by reference the foregoing paragraphs as if fully set forth herein.

45.    The Second Amendment to the United States Constitution provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."

46.    The Supreme Court has held that the Second Amendment "protect[s] an individual's right to carry a handgun for self-defense outside the home." *Bruen*, 597 U.S. at 10.

47.    Under the Supreme Court's test for Second Amendment challenges, "when the Second Amendment's plain text covers an individual's conduct," any regulation of that conduct violates the Second Amendment unless the government

"demonstrate[s] that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Id.* at 17.

48.    Under the plain text inquiry, the only question is "whether the plain text of the Second Amendment protects … carrying handguns publicly for self-defense." *Id.* at 32. "[I]t does." *Id.* The "definition of 'bear' naturally encompasses public carry." *Id.* And just as "[n]othing in the Second Amendment's text draws a home/public distinction with respect to the right to keep and bear arms," *id.*, nothing in the text draws a distinction between public locations. "The Second Amendment's plain text thus presumptively guarantees" Plaintiffs "a right to 'bear' arms in public for self-defense," *id.* at 33, and the government must justify any locational restrictions with historical tradition, *id.* at 17.

49.    There is no "well-established and representative historical analogue" for 18 U.S.C. § 930(a) or 39 C.F.R. § 232.1(l). *Bruen*, 597 U.S. at 30. Rather than impose a blanket prohibition on firearms at post offices, for nearly 200 years the federal government criminalized only harmful conduct. 18 U.S.C. § 930(a) and 39 C.F.R. § 232.1(l) are therefore unconstitutional under the Second Amendment because they ban the carry of firearms within United States Post Offices and on publicly accessible associated property, such as post office parking lots.

50.    Each of the Individual Plaintiffs and the Organizational Plaintiffs' members intend and desire to carry firearms in the immediate future on United States Post Office property and would do so today, but for their reasonable fear of arrest and prosecution.

16

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for the following relief:

1. Issue a declaratory judgment that 18 U.S.C. § 930(a) and 39 C.F.R. § 232.1(l) are unconstitutional under the Second Amendment, insofar as they prohibit the possession or carrying of firearms in United States Post Offices and on publicly accessible property under the control of the United States Postal Service, both as applied to Plaintiffs and on their face;

2. Issue a permanent injunction enjoining enforcement of 18 U.S.C. § 930(a) and 39 C.F.R. § 232.1(l), insofar as they prohibit the possession or carrying of firearms in United States Post Offices and on publicly accessible property under the control of the United States Postal Service;

3. Award Plaintiffs the costs of this action and reasonable attorney's fees; and

4. Award Plaintiffs such other legal and equitable relief as the Court deems just and appropriate.

Dated: May 26, 2026                                           Respectfully submitted,

<br>

/s/ _____

Michael A. Giaramita Jr.                                      Jonathan S. Goldstein
GIARAMITA LAW OFFICES, P.C.                                   GOLDSTEIN LAW PARTNERS, LLC
101 West Chester Pike, Suite 1A                               200 School Alley, Ste. 5
Havertown, PA 19083                                           Green Lane, PA 18054
(484) 558-0076                                                (610) 949-0444
mike@glawpa.com                                               jonathan@goldsteinlp.com
*Counsel for Individual Plaintiffs*                           *Counsel for Individual Plaintiffs*
*and Plaintiff NRA*

Joseph G.S. Greenlee                                          Oliver M. Krawczyk
NRA – INSTITUTE FOR LEGISLATIVE ACTION                        AMBLER LAW OFFICES, LLC
11250 Waples Mill Road                                        115 South Hanover Street, Suite 100

17

Fairfax, VA 22030
(703) 267-1161
jgreenlee@nrahq.org
(*Pro hac vice* forthcoming)
*Counsel for Plaintiff NRA*

Carlisle, PA 17013
(717) 525-5822
oliver@amblerlawoffices.com
*Counsel for Plaintiffs GOA and GOF*